**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **JAN SANCHEZ** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | |
| | **:** | **NO: 07-4255** |
| **FERETTI, INC., ET AL.** | **:** | |


**MEMORANDUM AND ORDER**


LYNNE A. SITARSKI                                                    June 20, 2008
UNITED STATES MAGISTRATE JUDGE

      Presently before this Court is the Motion for Summary Judgment of Defendant Feretti

Co., Inc. (Doc. No. 27).  Plaintiff Jan Sanchez has opposed this motion (Doc. No. 28) and

Defendant has filed a reply brief (Doc. No. 29).

      As more fully explained herein, the Defendant's Motion For Summary Judgment will be

**GRANTED.**


**A.     FACTS**

      Considering the facts in the light most favorable to the Plaintiff, the facts are as follows:

      In June, 2006, defendant Feretti Co., Inc. (hereinafter "defendant" or "Feretti") offered a

car for sale on eBay, a widely-known auction website.  The car, a 2005 Lexus SC 430, was

advertised on eBay as a "recovered theft" vehicle that was "recovered with nothing more than

very minor damage to the door handle and door lock on the drivers side (both have been professionally repaired)."  The advertisement described the car as a "nearly new absolutely gorgeous and fantastically loaded Lexus SC 430 which is being discounted simply due to its theft history," and noted that the car was being offered with a Pennsylvania "Reconstructed Title." *See* Exhibit A to Defendant's Motion for Summary Judgment.

Plaintiff Jan Sanchez (hereinafter "Plaintiff" or "Sanchez"), a Florida resident, contacted defendant Feretti, a Pennsylvania resident.   According to plaintiff, he contacted defendant's sales representative, Karol Tumanyan, who also informed plaintiff that the vehicle was discounted because of the theft history.  Tumanyan informed the Plaintiff that the stolen vehicle had been recovered, and had only minor damage.  According to plaintiff, Tumanyan never told plaintiff that the vehicle had a salvage title.

Thus, according to plaintiff, on June 29, 2006, he agreed to purchase the vehicle from defendant for $47,400, or $15,000 less than market value, with the discount attributable to the fact that the vehicle had a theft history and a "PA Reconstructed Title."  Plaintiff was provided with a purchase order which contained a section entitled "Warranty Information."  Within this section, a box labeled "Factory Warranty" is checked off and the document is signed by both parties.

Plaintiff's agent, Tony Reese, arrived at defendant's business on July 10, 2006, and took possession of the vehicle.  Reese delivered the vehicle to Plaintiff at his home in Florida. According to Plaintiff and his expert witness, the vehicle operated "fine."  On or about February 28, 2007, Plaintiff began exploring the possibility of trading in the vehicle at a Lexus dealership. The Lexus dealership obtained a CarFax report, which indicated that the vehicle was salvaged.

The Lexus dealership also obtained a copy of the title of the vehicle from Defendant; the title similarly reflected that the vehicle was salvaged.  Thus, the Lexus dealership refused to accept the vehicle as a trade-in.

Plaintiff has not come forward with any evidence of any defects in workmanship or parts of the vehicle.  In fact, as noted, plaintiff and his expert have both testified that the car operated "fine."

Plaintiff brought a civil action against Defendant on July 12, 2007 in the Montgomery County Court of Common Pleas.  Plaintiff brought the following claims in the Complaint: Fraudulent Misrepresentation (Count I), Breach of Contract (Count II), Negligent Misrepresentation (Count III), Magnuson-Moss Warranty claim (Count IV), Pennsylvania Unfair Trade Practices and Consumer Protection Law claim (Count V), and Pennsylvania Automotive Industry Trade Practices claim(Count VI).  Plaintiff seeks damages in the amount of the purchase price of the vehicle, incidental costs, repair costs, insurance, estimate cost, taxes, registration, insurance, and all collateral charges as well as punitive damages, attorney's fees and treble damages.

On October 12, 2007, Defendant removed the case to this Court on the basis of federal question and diversity jurisdiction.  Defendant has now moved for summary judgment on Counts I, III, IV, V, and VI of Plaintiff's Complaint.


**B.    LEGAL STANDARDS**

Summary judgment is to be granted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact...and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*

All doubts as to the existence of a genuine issue of material fact are resolved against the moving party, and the entire record is examined in the light most favorable to the nonmoving party.  *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir. 1982).  However, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson*, 477 U.S. at 257.

## C.    MOTION FOR SUMMARY JUDGMENT

### 1.  Counts I (Fraudulent Misrepresentation), III (Negligent Misrepresentation) and V (Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL))

Defendant has moved for summary judgment on Plaintiff's Fraudulent Misrepresentation, Negligent Misrepresentation, and UTPCPL claims on the grounds that these claims are barred by the economic loss doctrine.[1]  Plaintiff opposes summary judgment, arguing that the economic loss doctrine is not applicable to these claims.[2]

---

[1]  Defendant argues in the alternative that these counts should be dismissed pursuant to the gist of the action doctrine.  Because I conclude that the economic loss doctrine bars these claims, it is not necessary to address the applicability of the gist of the action doctrine.

[2]     Plaintiff has not opposed Defendant's motion with regard to the applicability of the economic loss doctrine to Plaintiff's negligence claims.  I will therefore grant Defendant's Motion for Summary Judgment on Count III of Plaintiff's Complaint as unopposed.

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Contract law permits the parties to negotiate the terms of the manufacturer's liability. In exchange for allowing this restriction on a manufacturer's liability, consumers can negotiate a lower price. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). Contract theories are specifically aimed at and perfectly suited to provide complete redress in cases involving economic losses. *REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A.2d 128 (Pa. Super. Ct. 1989). As the United States Supreme Court explained in *East River*, this doctrine preserves important distinctions between tort law and contract law.

An *en banc* panel of the Pennsylvania Superior Court adopted the economic loss doctrine in *REM Coal*. The *REM Coal* Court explained that economic losses "are based upon and flow from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased." 563 A.2d at 134.

It is well-settled in Pennsylvania that the economic loss doctrine precludes recovery for economic losses in a negligence action where the plaintiff has suffered no physical or property damage. *Aikens v. Baltimore & Ohio R.R. Co.*,501 A.2d 277, 279 (Pa. Super. Ct. 1985)(no cause of action lies for negligence that causes only economic loss); *Rock v. Voshell*, 397 F.Supp.2d 616, 627-28 (E.D. Pa. 2005)(applying Pennsylvania law, economic loss doctrine bars negligence and negligence per se causes of action); *Eagle Traffic Control v. Addco*, 882 F.Supp. 417, 419 (E.D. Pa. 1995)(applying Pennsylvania law, economic loss doctrine applies to claims of negligent misrepresentation). Accordingly, Count III of Plaintiff's complaint, asserting a negligent

misrepresentation claim, is barred by the economic loss doctrine, and will be dismissed.[3]

      Plaintiff also brings claims for fraudulent misrepresentation (Count I) and for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count V), 73 PA. CONS. STAT. §§ 201-1 *et seq.* (hereinafter UTPCPL).  Defendant has moved for summary judgment on these claims as well, again relying on the economic loss doctrine.

The United States Court of Appeals for the Third Circuit applied the economic loss doctrine to fraud claims and a UTPCPL claim in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002).  In *Werwinski*, plaintiffs brought claims as a result of a defect in vehicles manufactured by defendants.[4]  According to plaintiffs, defendant Ford was aware of the defects with the vehicle, and was also aware of the operating difficulties caused by the defects.  Plaintiffs alleged that Ford not only failed to warn consumers of the defects, but it also actively concealed the defects from consumers.  There was no injury to anything but the product.  Plaintiffs brought claims for breach of express warranty, breach of implied warranty, fraudulent concealment and violations of the Pennsylvania UTPCPL.

In an extensive and well-reasoned opinion, the Third Circuit court determined that the economic loss doctrine precluded plaintiffs' fraud and UTPCPL claims.  In so concluding, the Third Circuit recognized that some courts have excepted "fraud in the inducement claims" from the economic loss doctrine, but only where the fraud is <u>not</u> inextricably intertwined with contract

---

[3]     As noted previously, Plaintiff has not opposed Defendant's Motion for Summary Judgment on Plaintiff's Negligent Misrepresentation claim.

[4]     The plaintiffs in *Werwinski* alleged that their Ford vehicles, manufactured between 1991 and 1995, contained defective transmission parts and, as a result of the defects, the vehicles were subject to significant operational malfunctions, including sudden acceleration, total loss of acceleration, and sudden shifts into reverse.

claims.  *Id.* at 677-78.  The Third Circuit explained, "because appellants' fraudulent concealment claims relate to the 'quality or character of the goods sold,' the claims clearly are 'intertwined' with, and not 'extraneous' to, their breach of warranty claims."  *Id.* at 678.   The court further noted that the fraud claims were "undergirded by factual allegations identical to those supporting their breach of contract counts."  *Id.* (citations omitted).

The fraud claims advanced by plaintiff in the present case are inextricably intertwined with the breach of contract claim:  the fraud claims arise solely out of the defendant's alleged misrepresentation(s) about the quality and character of the vehicle sold to the plaintiff.  The facts that may support a breach of contract claim are identical to those that would support the fraud claims.  Plaintiff alleges that the vehicle did not conform to the parties contractual understanding because the defendant represented that the vehicle had a "reconstructed" title, when in fact it had a salvaged title.  This contention is the linchpin of both the breach of contract claim and the fraudulent misrepresentation claims.[5]

---

[5]     Plaintiff argues that there is a split between the Third Circuit and Pennsylvania courts on the application of the economic loss doctrine.  It is true that some Pennsylvania Common Pleas courts have held - or at least suggested in *dicta* - that the economic loss doctrine does not apply to fraud or UTPCPL claims.

However, in a diversity case such as this, a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts.  *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918 (3d Cir. 1982).  Difficulties arise where the highest state court has not yet authoritatively addressed the critical issue.  The Pennsylvania Supreme Court has not yet addressed the issue of whether the economic loss doctrine bars fraud and/or UTPCPL claims.  Thus, the disposition of this issue must be governed by a prediction of how the state's highest court would decide were it confronted with the problem.  *See Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 896-97 (3d Cir. 1983); *see also McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661-62 (3d Cir. 1980).

As the *Werwinski* Court noted, Pennsylvania courts have evidenced a "lack of hospitality to tort liability for purely economic loss" and have also recognized a willingness to restrict

Accordingly, the economic loss doctrine bars Plaintiff's claims set forth in Counts I, III and V.  Defendant's Motion for Summary Judgment is granted with respect to Counts I, III, and V.

### 2.  Count IV (Magnuson-Moss Warranty Improvement Act, 15 U.S.C. § 2301 *et seq.*)

The Magnuson-Moss Warranty Improvement Act (hereinafter "MMWA") creates a right of action for consumers arising out of a breach of a "written warranty" or an implied warranty. *See* 15 U.S.C. §2310(d).  The MMWA defines "written warranty" as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

*See* 15 U.S.C. §2301(6).  The MMWA provides a civil remedy to a consumer who is damaged by a warrantor's failure to comply with the obligations imposed upon the warrantor by the MMWA.

---

intentional tort claims that overlap with contract claims.  286 F.3d at 680.  Thus, the Third Circuit has predicted that the Pennsylvania Supreme Court would apply the economic loss doctrine to UTPCPL and fraud claims.  *See Id.* at 661.

In any event, when confronted with two "competing yet sensible interpretations of Pennsylvania law," this Court should choose the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently.  *Id.* at 680 (citing *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002)(additional citations omitted).

*See* 15 U.S.C. §2310(d)(1).

Defendant has moved for summary judgment on Plaintiff's MMWA claim set forth in Count IV of the Complaint, arguing that Plaintiff's claim fails because the evidence establishes that the vehicle did not suffer from any defect.  Defendant relies on case law from other circuits which set forth a three-prong test for a Magnuson-Moss Warranty Improvement Act violation. This test requires that (1) the vehicle has a defect in parts or workmanship; (2) the warrantor is not able to remedy the defect in parts or workmanship; (3) the plaintiff suffer economic harm as a result.  *See eg. Watson v. Fleetwood Motor Homes of Indiana, Inc.*, 2007 WL 2156351 (W.D. N.C. 2007).

Plaintiff responds that Defendant misrepresented the consumer's warranty rights, thereby violating the Magnuson-Moss Warranty Improvement Act.  Specifically, Plaintiff argues that the agreement between the parties was that the vehicle would be covered by a Lexus factory warranty and because the vehicle was "salvaged," unbeknownst to Plaintiff, it was not covered by this warranty.  Plaintiff cites no authority that would tend to support his argument.

Although not addressed by this circuit, the Second, Fourth, Ninth and D.C. Circuits as well as the District of New Jersey, have all persuasively concluded that state law governs warranty claims brought under the Magnuson-Moss Act except when explicitly modified by the Act's minimum standards.  *See Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 247-8 (2d Cir. 1986); *Carlson v. General Motors Corp*., 883 F.2d 287 (4th Cir. 1989); *Milicevic v. Fletcher Jones Imports Ltd,* 402 F.3d 912, 918 (9th Cir. 2005); *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986); *In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 19 F.Supp. 2d 263, 267 (D. N.J. 1998).

Under Pennsylvania law, in order to prove breach of warranty, a party must prove that the product was defective.  *See Altronics of Bethlehem, Inc. v. Repco*, *Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992); *see also Hull v. Fleetwood Enterprises, Inc.*, 2008 WL 519608, *4 (W.D. Pa. 2008). This can be proven by either direct or circumstantial evidence.  *Id.*

In this case, Plaintiff alleges that the sales contract included Defendant's promise that the vehicle was covered by a factory warranty.  As noted above, Plaintiff and his expert have both testified that there were no problems with the vehicle itself.  According to Plaintiff, the vehicle operated "fine."

This Court concludes that, in the absence of evidence of a defect with the product itself, Plaintiff's claim under the Magnuson-Moss Warranty Act cannot survive summary judgment. Accordingly, Defendant's Motion for Summary Judgment on Count IV of Plaintiff's Complaint is granted.

### 3.  Count VI (Pennsylvania Automotive Industry Trade Practices Act (37 Pa. Code 301.1 *et seq*.))

Defendant also moves for summary judgment on Count VI of Plaintiff's Complaint, which asserts a claim under Pennsylvania's Automotive Industry Trade Practices Act (AITP), on the grounds that the AITP does not provide a private right of action.  Plaintiff contends that the AITP was issued in accordance with the regulations of the UTPCPL and accordingly, the unfair and/or deceptive practices defined in the AITP constitute a separate cause of action.

The AITP are regulations adopted by the Bureau of Consumer Protection pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 PA. CONS. STAT. § 201-

3.1) to establish acts or practices related to advertisements and sales presentations of motor vehicles as being unfair or deceptive.  *See* 37 Pa. Code 301.2-.6.

The AITP more specifically defines unfair and deceptive practices within the automotive industry trade practices, and does not provide for a separate and independent cause of action from a UTPCPL claim.  After review of the relevant AITP provisions (37 Pa. Code 301.1-.6), this Court finds that violations of these provisions may constitute violations of the UTPCPL, but does not give rise to a separate claim under the AITP itself.

Accordingly, Defendant's Motion for Summary Judgment is granted with respect to Count VI.


**C.     CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment s to Counts I, III, IV, V and VI of Plaintiff's Complaint will be granted.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAN SANCHEZ** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **NO: 07-4255** |
| | : | |
| **FERETTI, INC., ET AL.** | : | |

## ORDER

AND NOW this ____20TH____ day of June, 2008, upon consideration of

Defendant's Motion for Summary Judgment, Plaintiff's response, and Defendant's reply brief, it

is hereby **ORDERED** that Counts I, III, IV, V, and VI are **DISMISSED** with prejudice.

BY THE COURT:

    /s/ Lynne  A. Sitarski
LYNNE A. SITARSKI
UNITED STATE MAGISTRATE JUDGE